UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                            Case No. 19-CR-176

WAYNE STILEN,

        Defendant.

## PLEA AGREEMENT

1.    The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and William J. Roach, Assistant United States Attorney, and the defendant, Wayne Stilen, individually and by attorney Martin Pruhs, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.    The defendant has been charged in two counts of a two count information which allege violations of Title 21, United States Code, Sections 841(b)(1)(B) and Title 18, United States Code, Sections 924(c)(1)(A).

### Waiver of Indictment

3.    The defendant has read and fully understands the charges contained in the information and waives his right to proceed by grand jury indictment. He fully understands the nature and elements of the crimes with which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to plead guilty to the following counts set forth in full as follows:

## COUNT ONE

**THE UNITED STATES ATTORNEY CHARGES THAT:**

1. Beginning in approximately May 2019, and continuing until on or about September 12, 2019, in the State and Eastern District of Wisconsin and elsewhere,

**WAYNE L. STILEN**

knowingly and intentionally conspired with persons known and unknown to the grand jury, to distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

2. The quantity of drugs involved in the conspiracy attributable to the defendant as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, involved 50 grams or more of a mixture and substance containing methamphetamine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B).

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

1. On or about September 12, 2019, in the State and Eastern District of Wisconsin,

**WAYNE L. STILEN**

knowingly possessed firearms in furtherance of the drug trafficking crime charged in Count One of this Indictment.

2. The firearms are more fully described as one Raven Arms MP-25 .25 caliber handgun, serial number 1065771; one Phoenix P-51 .25 caliber handgun, serial number 4782; one Ruger M77 Mark II .308 Winchester rifle, serial number 781-34728; and one Remington 141

2

*32 gauge shotgun, serial number 17115.*

*All in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).*

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offenses described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

On August 7, 2019, Brown County Drug Task Force (BCDTF) investigators spoke with a confidential informant (CS-1) who was arrested in Green Bay, Wisconsin, on methamphetamine charges. CS-1 advised that Malachi Root supplied him with approximately one ounce per day of methamphetamine prior to his arrest. CS-1 indicated that Root sold five to 10 pounds of methamphetamine per week to others in the Green Bay area. Kala Kennedy assisted Root with sales. Root was also known to carry a firearm and keep his money in a safe. CS-1 indicated that Root sold other drugs as well.

On September 9, 2019, BCDTF located Root at a Green Bay, Wisconsin, area hotel and watched him load his car with several bags. Root then drove to a local auto store where he was arrested outside of his car. On the driver's seat of Root's car, law enforcement seized a loaded Ruger 9 mm handgun. A variety of drugs were located in several bags and suitcases including 930 grams hash oil, 463 grams marijuana, 68 grams MDMA, 23 grams of meth, 8 grams of cocaine, a money counter, marijuana edibles (cookies and gummies) and approximately $25,728. A later search of Root's hotel room revealed an unloaded SKS assault rifle.

Based on CS-1's information, BCDTF and LWAM investigators arrested Liebergen in the lobby area of a hotel in Appleton. Liebergen's hotel room was later searched and law enforcement seized approximately 26.4 kilograms of methamphetamine and one kilogram of white powder, suspected to be China White heroin. Liebergen admitted that he traveled from Missouri with over 50 pounds of meth and one kilogram of a substance believed to be heroin. Liebergen identified Sally Miller, Malachi Root, and Wayne Stilen as distributors of the methamphetamine. He stated that after Sally Miller's recent arrest, Jeremy Ludwig and others took over her drug distribution business.

Liebergen's cell phone was continuously ringing with those attempting to purchase meth from him while he was in law enforcement custody. Liebergen provided consent to law enforcement for use of his cell phone to communicate with two of those individuals, identified as Wayne Stilen and Jeremy Ludwig. In response to text messages to meet, Stilen advised he had several firearms to trade for methamphetamine. Law enforcement arrested Stilen on September 12, 2019, after he arrived at the hotel. Stilen possessed a loaded Raven Arms .25 caliber handgun in his sweatshirt pocket and a loaded Phoenix P-51 .25 caliber handgun in his waistband. Law enforcement also seized two rifles in his truck.

3

Stilen provided a *Mirandized* statement indicating that he met Liebergen through Sally Miller. Miller met Liebergen in April 2019 and received meth from him shortly thereafter. Stilen traveled with Miller to Missouri to obtain a pound of meth from Liebergen. Stilen also traveled alone to Missouri on one occasion to obtain meth from Liebergen. Stilen identified multiple individuals assisting Miller with methamphetamine sales. Stilen advised that Malachi Root purchased meth from Miller because Root would quickly sell all of his meth and need more. Stilen stated Miller also received 5-8 packages containing multiple pounds of meth that Liebergen sent through the mail.

In sum, Stilen agrees that he conspired to distribute and possess with intent to distribute in excess of 350 grams but less than 500 grams of methamphetamine. Further, during the course of the conspiracy, including the time of his arrest, Stilen possessed one or more firearms in furtherance of the conspiracy.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, these offenses.

## PENALTIES

6. The parties understand and agree that Count One carries the following maximum penalties: a maximum of 40 years imprisonment and a $5,000,000 fine; a mandatory minimum term of 5 years of imprisonment; and a mandatory special assessment of $100. Count One also requires at least 4 years of supervised release, and a maximum of a lifetime on supervised release. Count Two carries a maximum of life imprisonment with a five year mandatory minimum term that shall run consecutive to any term imposed on Count One, a maximum fine of $250,000, a special assessment of $100, and a maximum term of five years' supervised release.

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney including any possibility that the defendant may qualify as career offender under the sentencing guidelines.

## PROOF OF DRUG WEIGHT FOR STATUTORY MAXIMUM PENALTY

8. The parties understand and agree that for the penalties in 21 U.S.C. § 841(b)(1)(B) to apply, as provided in paragraph 6 above, the government must prove beyond a reasonable doubt that the offense to which the defendant is pleading guilty involved at least 50

4

grams of a mixture and substance containing methamphetamine. The defendant agrees that the government possesses sufficient, admissible evidence to meet this burden.

## ELEMENTS

9. The parties understand and agree that to sustain the charge set forth in Count One, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the conspiracy as alleged in the indictment existed;
> Second, the defendant knowingly and intentionally joined the conspiracy with the intent to further its objective.
> Further, while not an element, for the increased penalties to apply, the government must prove that the offense involved 50 grams or more of mixture and substance containing methamphetamine.

As to the firearm possessed in furtherance of a drug trafficking crime as charged in Count Two, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the defendant committed the crime of conspiracy to distribute methamphetamine as charged in Count One of the information; and
> Second, he knowingly possessed a firearm; and
> Third, his possession of the firearm was in furtherance of the crime of distribution of methamphetamine.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The defendant acknowledges and agrees that his attorney has discussed the potentially applicable sentencing guidelines provisions with him to the defendant's satisfaction.

5

13.  The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

14.  The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

15.  The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

16.  The parties agree to recommend to the sentencing court that the relevant conduct attributable to the defendant is at least 350 grams but less than 500 grams of a mixture and substance containing methamphetamine, a Schedule II controlled substance.

### Base Offense Level

17. The parties will recommend to the sentencing court that the applicable base offense level for the offense charged in Count One is 28 under Sentencing Guidelines Manual § 2D1.1(c)(6). The parties will recommend that the applicable base offense level for the offense charged in Count Two is five years imprisonment under Sentencing Guidelines Manual § 2K2.4(b).

### Specific Offense Increases

18. The parties acknowledge and understand that the government will recommend that no specific offense increases apply in the case.

### Acceptance of Responsibility

19. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

### Sentencing Recommendations

20. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

21. Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the fine to be imposed;

7

the amount of restitution and the terms and condition of its payment; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

22. The parties agree to recommend a total sentence of 10 years imprisonment, that is, five years prison on Count One and five years prison on Count Two running consecutive to each other. The government remains free to take a position with respect to any fact or factor pertinent to the sentencing decision consistent with this agreement.

## Court's Determinations at Sentencing

23. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraphs 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

24. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

25. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction or on further order of the court. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial

8

obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

26. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form.

### Special Assessment

27. The defendant agrees to pay the special assessment in the amount of $200 prior to or at the time of sentencing.

### DEFENDANT'S WAIVER OF RIGHTS

28. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

29. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offenses to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

30. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

31. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the

10

Case 1:19-cr-00176-WCG    Filed 04/17/20    Page 10 of 13    Document 131

entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

## Further Civil or Administrative Action

32. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

33. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

34. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

35. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the

11

government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

36. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 3-5-20

WAYNE STILEN
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 3/14/20

MARTIN PRUHS
Attorney for Defendant

For the United States of America:

Date: 4/17/20

MATTHEW D. KRUEGER
United States Attorney

Date: 4/17/20

WILLIAM J. ROACH
Assistant United States Attorney

13